# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-70011

United States Court of Appeals
Fifth Circuit

**FILED**

January 15, 2018

Lyle W. Cayce
Clerk

PAUL WAYNE SLATER,

Petitioner–Appellant,

versus

LORIE DAVIS, Director,
   Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:14-CV-3576

Before JONES, SMITH, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Paul Slater, a Texas death row inmate, seeks a certificate of appealability ("COA") under 28 U.S.C. § 2253(c)(2) to appeal the denial of his petition

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-70011

for writ of habeas corpus.  We deny the request for a COA on all claims.

## I.

In 1995, Eric Washington, Roddrick Martin, and Glenn Andrews drove to Houston with $3,000 to purchase crack cocaine.  They went to a carwash and waited until a Cadillac with two men inside pulled into a bay.  Martin and Andrews got into the back seat of the Cadillac while Washington waited in the car.  Though the accounts differ on what happened next, Washington testified, and forensic evidence supports, that one of the men in the Cadillac got out, went to the trunk, and opened a backseat door.  The driver then pulled a gun, and the driver and other man began shooting.  Martin and Andrews were killed, and Washington fled without calling the police.  Firefighters responding to a call about gunfire found Andrews and Martin shot with 9mm and .367 or .38 bullets, with $200 in cash lying nearby.

The following month, police stopped a Cadillac driven by Julius Woods. The car contained evidence of blood, and there was a bullet hole in an interior panel.  Over a month later, Slater appeared at the police station and provided a videotaped statement in which he admitted that he and Woods had met the victims for a drug deal.  He admitted shooting the victims with his 9mm pistol but disclaimed any intent to rob or kill.  Slater explained that one of the victims drew a weapon and started shooting and that he shot back from the front passenger seat.  He stated Woods never fired a shot and that Washington may have fired a weapon as well, which would explain the presence of two types of bullets.

The state charged Slater with capital murder during the course of a robbery.  Charles Freeman represented Slater at trial, using Slater's confession as the foundation for the defense.  Though initially the strategy centered on self-defense, with Slater claiming he did not shoot until one of the buyers

2

No. 17-70011

pulled a weapon, Freeman did not request a jury instruction on murder as a lesser-included offense, which was required for the jury to be instructed on self-defense.

The state used Slater's confession, Washington's eyewitness testimony, and evidence from the scene. Washington testified that the buyers did not have weapons and that Martin carried money in the front of his shorts, though police never recovered any cash from his body. Washington saw one of the men in the Cadillac get out and open the trunk. He then became distracted until he heard shooting. At that point he saw the driver firing a pistol into the back seat, and the passenger was outside the car firing into the back door.

This is confirmed by forensic evidence. Two different weapons fired the bullets recovered from the autopsies, and the trajectory of the bullet strikes refuted Slater's description of shooting from the passenger seat.

A jury found Slater guilty of capital murder for intentionally causing the death of Martin during the course of a robbery or attempted robbery. The jury then answered three special interrogatories in a manner requiring the imposition of the death penalty.

The conviction and sentence were affirmed on direct appeal. *Slater v. State*, No. AP-72, 623 (Tex. Crim. App. Apr. 15, 1998) (unpublished). On a state habeas application, Slater raised sixteen claims, which were denied by the trial court. The Texas Court of Criminal Appeals adopted the state court's findings and conclusions, denying the habeas application. *Ex parte Slater*, No. WR-78,134-01, 2014 WL 6989189 (Tex. Crim. App. Dec. 10, 2014) (unpublished).

Slater filed his federal habeas petition in 2015. The district court denied all relief, granted summary judgment to the state, and denied a COA. Slater

No. 17-70011

appeals the denial of a COA on four claims, two of which were adjudicated on the merits in state court and two of which were unexhausted in the state court and thus procedurally barred.

## II.

A federal court may issue a COA only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The imposition of the death penalty alone is insufficient for the issuance of a COA, but any questions will be resolved in the petitioner's favor. *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

Slater asks for a COA on the district court's disposition on the merits of his two ineffective-assistance-of-trial-counsel ("IATC") claims. Where a constitutional claim was rejected on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the state trial court adjudicated these claims on the merits, the district court reviewed the decision under *Strickland v. Washington*, 466 U.S. 668 (1984), and asked whether the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under *Washington*, a defendant is denied his Sixth Amendment rights when his attorney's performance "falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 3 (2003). Judicial assessment of performance is "highly deferential" and must attempt to eliminate "the distorting effects of hindsight." *Washington*, 466 U.S. at 689. Thus federal relief is allowed only where counsel's decision on trial tactics and strategy is "so ill chosen that it permeates the entire trial with

No. 17-70011

obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 753 (5th Cir. 2003). Prejudice requires showing there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Washington*, 466 U.S. at 694. Because jurists of reason would not find the district court's assessment of Slater's IATC claims debatable or wrong under this standard and § 2254(d), we deny the COA on these claims.

## A.

Slater first claims IATC at the guilt-innocence phase. He posits that his lawyer should have requested a jury instruction on the lesser-included offense of murder, which would have allowed the jury also to receive an instruction on self-defense.

Though the state court decided this claim on the merits, Slater asserts it is effectively unexhausted because the district court failed to consider new evidence he presented for the first time on federal review.[1] Under *Cullen v. Pinholster*, 563 U.S. 170 (2011), however, the district court is confined to reviewing the record before the state habeas court. *Id.* at 185. Consistent with *Pinholster* and binding under the rule of orderliness are *Ibarra v. Thaler*, 691 F.3d 677 (5th Cir. 2012), *vacated in part on other grounds*, 723 F.3d 599 (5th Cir. 2013), and *Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012). Those hold that, even if new evidence would be considered unexhausted, our task is to consider "only the record that was before the state habeas court." *Clark*, 673 F.3d at 417; *see also Ibarra*, 691 F.3d at 682.

Slater asserts that Freeman was ineffective in not requesting an

---

[1] Slater presented newspaper articles about Freeman's background, an affidavit Freeman submitted in a different case five months after his trial explaining he thought attorneys should make most trial decisions, and an affidavit from a state trial judge stating that Freeman was incompetent, dishonest, and unethical.

No. 17-70011

instruction on the lesser-included offense of murder, which would have allowed the jury to receive an instruction on self-defense.  Freeman filed an affidavit in which he stated he made this decision in deference to Slater's preference to take an all-or-nothing approach, hoping the jury would find the evidence insufficient to support the robbery element of capital murder.  Then Slater would go free rather than giving the jury the "easier" option of convicting him of murder.  Freeman died two years after filing the affidavit.  Slater did not file his affidavit until ten years after Freeman had died.

Slater has not presented clear and convincing evidence that would rebut the state court's finding that Freeman's affidavit was reliable and Slater's was not credible.  *See* 28 U.S.C. § 2254(d)(1).  Nor has he shown that the district court's finding under *Washington* is debatable among jurists of reason.

The State's evidence rebuts Slater's contention that a self-defense instruction would have resulted in a reasonable probability of acquittal on this ground.  The evidence supporting self-defense is Slater's videotaped statement, the same evidence that he presented to negate the robbery element of capital murder and that the jury found unconvincing.  *Slater v. Texas*, No. 72,623, at 36 (Tex. Crim. App. Nov. 17, 2015).  Further, the record reflects that Freeman and Slater had a lengthy discussion about what request the defense should make for jury instructions.  An all-or-nothing approach does not fail *Washington*, even given the risks it entails.  *Druery v. Thaler*, 647 F.3d 535, 539–40 (5th Cir. 2011).  The district court's finding in this regard is not debatable.

Nor is it debatable that Freeman was permitted, if not required, to follow Slater's decision.  *Autry v. McKaskle*, 727 F.2d 358, 362 (5th Cir. 1984).  A pretrial psychological evaluation did not reveal evidence of "a mental disease or mental defect on or about the time of the alleged offense."  And a "competency

No. 17-70011

evaluation found that Slater understood the rudimentary concerns of his crim-inal trial." Thus, in light of the record at the state habeas court, the district court's finding on the merits is not debatable.

Slater attempts to circumvent the *Pinholster* bar by presenting a new claim of ineffective assistance of his state habeas counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012), asserting that counsel was ineffective in not procuring and presenting the new evidence to the district court. "Where, as in Texas,[2] the state procedural framework makes it highly unlikely that a defendant will have a meaningful opportunity to raise on direct appeal a claim of ineffective assistance at trial," the federal court is not barred from hearing the claim if counsel in the initial-review stage was ineffective. *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013). Thus, if Slater can show that his claim of IATC has some merit and that his state habeas counsel was ineffective under *Washington* for failing to present new evidence on that claim, he can overcome cause and prejudice such that we can consider the new evidence. *Martinez*, 566 U.S. at 14.

Under that standard, however, Slater cannot show that his underlying claim has merit. Even considering his new evidence, the record and the district court's opinion laid out sufficient factual support that make it undebatable among jurists of reason that the district court properly applied *Washington* and § 2254(d) to Slater's underlying claim addressing Freeman's conduct at trial. Because the new evidence would not change the determination of the ineffective-assistance or prejudice inquiry, Slater's state habeas counsel cannot be considered ineffective under *Washington* for failing to present it. Because

---

[2] Although Texas law does allow a defendant to raise a claim of IATC on direct appeal, the Supreme Court has held that the *Martinez* exception applies because Texas makes it "virtually impossible" to do so. *See Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Robinson v. State*, 16 S.W.3d 808, 811 (Tex. Crim. App. 2000).

No. 17-70011

the district court's findings on this issue are not debatable among jurists of reason, we deny a COA on this claim.

B.

Slater claims IATC at the punishment stage because his attorney did not present evidence of his organic brain impairment and learning disabilities. He also alleges ineffective assistance of state habeas counsel for not pursuing further testing, for not presenting certain school records to the state habeas court, and for not challenging Freeman's closing summation.

1.

At his state habeas proceeding, Slater introduced three new pieces of evidence to support his claim of Freeman's IATC: a 1998 evaluation by Dr. Walter Quijano showing a cognitive and learning disorder and recommending further testing; a 1991 evaluation by Dr. John Largen revealing an IQ of 77, finding memory impairments and diminished academic function, and stating that Slater's test results were "commensurate with the presence of organic brain impairment"; and an affidavit from Slater's mother stating that Freeman never asked about Slater's head injury or educational problems. Attached to the affidavit was a school report showing that at age twelve Slater functioned at a second- or third-grade level.

Under *Washington*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Washington*, 466 U.S. at 691.

The state habeas court found, and the district court agreed, that

8

No. 17-70011

Freeman adequately investigated Slater's possible mental-health issues and learning disability. Though further investigation may have added support to this claim, it would not have uncovered anything that was not available to Freeman at trial. Freeman had access to reports on Slater's mental condition, including a pre-trial clinical report by Dr. Edward Silverman and records from Orchard Creek Hospital. Silverman's report mentioned Slater's head injury and acknowledged prior IQ scores ranging from 63 to 80. The report concluded that there was no evidence that would have kept Slater from ascertaining the wrongfulness of his conduct. The hospital records also "produced mixed results."[3]

Freeman stated he then made the strategic call that the mixed evidence could be aggravating rather than mitigating. The decision not to present such mixed evidence has been found reasonable in several other cases. *See, e.g.*, *Rodriguez v. Quarterman*, 204 F. App'x 489 (5th Cir. 2006); *Hopkins v. Cockrell*, 325 F.3d 579 (5th Cir. 2003). This led the state habeas court to conclude that Freeman was not ineffective for failing to present the evidence to the jury.

That decision was unaltered by the state habeas court's analysis of the three additional pieces of evidence mentioned above. The evidence was cumulative and differed "only in detail, not in mitigating thrust"[4] from the evidence Freeman already had. Given the deference owed to counsel's strategic decision, and that the available evidence presented a "double-edged sword," we decline to issue a COA on this claim.

Slater also presented two new pieces of evidence in the district court, an evaluation from neuropsychologist Paul Schulz and additional school records.

---

[3] *Slater v. Davis*, No. 4:14-cv-3576, 2017 WL 1194374, at *29 (S.D. Tex. Mar. 30, 2017).

[4] *Id.* at *15.

No. 17-70011

But because of the bar of *Pinholster*, we do not consider that evidence.  Even if we looked at it under *Martinez* as Slater urges, it would not alter the conclusion about Freeman's performance.  The new evidence is cumulative of information contained in previous school reports and in Quijano's evaluation.

As the district court noted, Slater does not suggest a reasonable probability of a different result had Freeman prepared a different defense.  The jury was presented with extensive evidence of future dangerousness: Slater was caught selling crack cocaine; he shot a teenage boy at a church event; during a traffic stop Slater was in the back seat with a machine gun and a revolver; and he was found pawning electronics from a burglarized home.  The jury also considered testimony from Slater's mother about his head injury and school performance as mitigating evidence.  In the face of this evidence, jurists of reason would not find the district court's disposition of this claim debatable.

2.

Nor was Slater's state habeas counsel ineffective in failing to challenge Slater's summation at the punishment stage.  Because this claim was not raised in the state habeas proceeding, Slater alleges ineffective assistance of state habeas counsel for failure to raise it.  We ask whether Slater has demonstrated cause and actual prejudice to overcome the procedural default of this claim.  *See Coleman v. Thompson*, 501 U.S. 722, 745 (1991).  We evaluate cause under *Washington*.  *See Martinez*, 566 U.S. at 14.  Additionally, where "a petitioner brings a [*Washington*] claim under the AEDPA, [t]he pivotal question is whether the state court's application of the [*Washington*] standard was unreasonable."  *Garza*, 738 F.3d at 674.  Because the district court's denial of habeas relief on this claim is not debatable among jurists of reason, we decline to issue a COA.

Although Freeman's berating of the jury was unprofessional, that alone

10

does not meet the standard.  Cause is not satisfied just because habeas counsel failed to raise every nonfrivolous claim.  Rather, counsel has the freedom to select among the claims "to maximize the likelihood of success on appeal." *Vasquez v. Stephens*, 597 F. App'x 775, 780 (5th Cir. 2015) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  To show actual prejudice, a petitioner must demonstrate that errors "infect[ed] his entire trial with error of constitutional dimensions." *Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) (internal quotation omitted).

That did not occur here.  Slater's habeas counsel was not deficient in failing to raise this claim, and the underlying merit would not have altered the outcome of the habeas proceeding.  Though a less than stellar performance, Freeman's summation raised issues of residual doubt by revisiting the issue of Slater's low IQ raised in the guilt-innocence phase.  Because it cannot be said that Freeman's conduct "undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," we decline to issue a COA.  *See Washington*, 466 U.S. at 686.

## III.

Slater challenges the denial of his motion to stay and abate so that he could raise unexhausted claims in state court and could present new evidence for the exhausted claims.[5]  Procedural default "occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Bagwell v. Dretke*, 372 F.3d

---

[5] The unexhausted claims are IATC for Freeman's closing argument, the failure of Slater's habeas counsel to challenge Freeman's closing summation, and the unconstitutionality of the death penalty.  The exhausted claims are Freeman's IATC for not requesting the murder instruction and not presenting mitigating evidence on Slater's organic brain impairment and learning disabilities.

No. 17-70011

748, 755 (5th Cir. 2004). Where the district court denies a COA for a claim based on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484; *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

Permission to return to state court is a safety valve for unexhausted claims and, as such, is limited to situations where the district court finds "that there was good cause for the failure to exhaust the claim; that the claim is not plainly meritless; and there is no indication that the failure was for the purposes of delay." *Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010); s*ee also Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). Further, the petitioner must show that he has remedies under state law.

## A.

It is not debatable that Slater lacks a remedy under Texas law, so the district court's procedural ruling is not debatable. Texas courts will not consider a subsequent application for post-conviction relief unless the claims

> could not have been presented previously in a timely initial appeal . . . ; but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or . . . but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues.

TEX. CODE CRIM. PROC. art. 11.071 § 5(a). Slater could have raised all of these claims in his initial state habeas proceeding, except the claim of ineffective assistance of his habeas counsel that is addressed above.

Contrary to Slater's federalism concerns, it is the district court's role to examine state law to determine whether Slater met the requirements for a

stay. This was not an abuse of the district court's discretion. Under *Martinez*, the court is required to address whether the underlying claims have merit. If a claim is procedurally barred in state court, it is meritless. *Williams*, 602 F.3d at 309. Thus, the court properly exercised its discretion in looking to Texas law to determine that Slater lacks a remedy in state court.

## B.

In addition to the findings of procedural default, Slater's ineffective-assistance claims have been addressed at length above. Though the district court properly found Slater's death-penalty challenge procedurally barred, we also affirm the district court's alternative finding that the claim lacks merit. Jurists of reason would not find it debatable that current law does not support Slater's claim of unconstitutionality, and we therefore decline to issue a COA on this claim.

In sum, the district court's disposition of Slater's merits claims is not debatable. Further, jurists of reason could not debate whether the district court properly found his unexhausted claims procedurally barred. The motion for a COA is in all respects DENIED.

\* \* \* \* \*

JAMES L. DENNIS, Circuit Judge, concurring in the judgment:

Although I ultimately agree that Slater has not shown he is entitled to a COA, several disagreements prevent me from joining the majority opinion in full. The majority opinion rejects Slater's ineffective assistance of counsel claim as it relates to counsel's guilt-phase performance in part because, even considering evidence submitted for the first time in support of his federal habeas petition, "the district court properly applied [*Strickland v. Washington*,

466 U.S. 668 (1984),] and [28 U.S.C.] § 2254(d) to Slater's underlying claim." Op. at 7.  However, we may only consider Slater's new evidence under *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011), if the underlying claim was not "adjudicated on the merits."  If a claim is not adjudicated on the merits, to the extent we can consider it, our review is de novo.  *E.g., Cone v. Bell*, 556 U.S. 449, 472 (2009).    Contrary to the majority opinion's implication, then, proceeding under the assumption that the claim was not adjudicated on the merits, we would only consider Slater's new evidence under a de novo standard. Under the majority's assumptions, and applying a de novo standard, I cannot agree that Slater's claim is meritless beyond debate.

Nonetheless, even assuming, arguendo, that there is an exception to *Pinholster* for claims that are "fundamentally altered" by evidence presented for the first time in federal court, reasonable jurists would not debate whether the evidence Slater has submitted fundamentally alters his claim: at most, Slater's additional evidence, which only speaks to the credibility of trial counsel's affidavit provides additional evidentiary support for Slater's claim that was already presented and adjudicated in the state court proceedings.  *See Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014) (declining to find exception to *Pinholster* where petitioner "merely provided additional evidentiary support for his claim that was already presented and adjudicated in the state court proceedings").  I therefore conclude that Slater has not shown that jurists of reason would debate the correctness of the district court's refusal to consider the additional evidence and would deny a COA for this reason.

For a similar reason, I would decline to consider Slater's new evidence in support of his penalty-phase *Strickland* claim.  The new evidence presented in support of this claim is cumulative of information presented to the state habeas court; thus, reasonable jurists would not debate whether it "fundamentally alters" the claim.  *Cf. Escamilla*, 749 F.3d at 395.

Finally, with respect to Slater's argument that trial counsel's summation was deficient, the majority opinion's reasoning contravenes *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), to the extent it suggests that a petitioner has an additional burden beyond establishing that his state habeas counsel was ineffective and that he has "a substantial claim of ineffective assistance at trial." However, Slater's only argument that counsel's summation prejudiced his defense is the conclusory statement: "[t]he jurors conceivably answered the special issues in a manner that ensured a death sentence because [counsel] insulted their integrity and intelligence." And Slater fails to explain in his motion for a COA how state habeas counsel rendered ineffective assistance by failing to raise the ineffective summation claim. Because Slater has not shown that state habeas counsel was deficient or that counsel's closing remarks affected the outcome of his trial, I concur in the denial of a COA for this claim.

15